**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LIONEL TOYE,

                                        Petitioner,

             - v -                                       Civ. No. 9:15-CV-515
                                                              (BKS/DJS)
STEVEN RACETTE,

                                        Respondent.


**APPEARANCES:**                               **OF COUNSEL:**

LIONEL TOYE
Petitioner, *Pro Se*
11-A-0726
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN                 MICHELLE ELAINE MAEROV, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, New York 10271

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

On April 29, 2015, *pro se* Petitioner Lionel Toye filed a Petition for a Writ of *Habeas*

*Corpus*, pursuant to 28 U.S.C. § 2254, challenging a 2010 conviction, in Albany County Court, of

Robbery in the First Degree (N.Y. PENAL LAW § 160.15) and Criminal Possession of Stolen Property

in the Fifth Degree (N.Y. PENAL LAW § 165.40). Dkt. No. 1, Pet. Respondent answered the

Petition, Dkt. No. 8, Resp., and Petitioner filed a Traverse, Dkt. No. 32, Traverse, and several

supplemental Memoranda of Law and Exhibits, *see* Dkt. Nos. 20, 35, 37, 38, & 41. In his

supplemental filings, Petitioner requests that the Court conduct an evidentiary hearing. *See* Dkt. Nos. 38-1 & 41. For the reasons that follow, the Court recommends that the Petition be **denied**.

## I. BACKGROUND

### A. Summary of State Court Proceedings

#### 1. Petitioner's Arrest and Pre-Trial Proceedings

Petitioner was arrested on February 26, 2010 in Albany, New York. Dkt. No. 9-1, State Court R. [hereinafter "R."] Part 1 at p. SR 43. On February 27, 2010, Petitioner was arraigned in Albany City Criminal Court on a felony complaint that charged him with Robbery in the Third Degree and Criminal Possession of Stolen Property in the Fifth Degree. *Id.* at pp. SR 41-42. On March 31, 2010, an Albany County grand jury indicted Petitioner on one count of Robbery in the First Degree[1] and one count of Criminal Possession of Stolen Property in the Fifth Degree.[2] *Id.* at pp. SR 35-36. The indictment alleged that on February 26, 2010, at approximately 8:40 p.m., Petitioner forcibly stole property by "stating that he had a gun then placing his hand in his pocket and demanding money." *Id.* at p. SR 35.

On August 12, 2010, a suppression hearing was held concerning a statement made by Petitioner at the time of his arrest, as well as the show-up procedure used to identify Petitioner. Dkt. No. 10-1,[3] Suppression Hr'g Tr., dated Aug. 12, 2010, at p. 11. At the hearing, Albany Police

---

[1] Under N.Y. PENAL LAW § 160.15, "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he . . . displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."

[2] Under N.Y. PENAL LAW § 165.40, "[a] person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."

[3] The transcripts for proceedings held on the following dates are contained at Docket Entry 10-1: Apr. 5, 2010 ("Arraignment Tr."); Apr. 19, 2010 ("Plea Bargain Tr."); Aug. 12, 2010 ("Suppression Hearing Tr."); and Nov. 12 & (continued...)

Officer Robert Mulligan testified that at approximately 8:40 p.m., on February 26, 2010, he responded to a call that a woman had been robbed in the area of 101 South Pearl Street, in Albany, New York. *Id.* at pp. 12-13. Officer Mulligan encountered Jane Smith, who stated that she had just been robbed of $73, consisting of one $50 bill, one $20 bill, and three $1 bills, at 101 South Pearl Street. *Id.* at p. 14. Smith described the suspect as a black male who was wearing a green jacket, blue jeans, and white sneakers. *Id.* at pp. 14 & 21. Officer Mulligan then took Smith in his patrol car to drive around the area and see if they saw anyone matching the description of the suspect. *Id.* at pp. 15-16. At approximately 9:20 p.m., Officer Mulligan pointed out Petitioner to Smith, who stated, "I think that's him. Oh, yes, that's the guy." *Id.* at p. 17. Officer Mulligan approached Petitioner and asked him where he was coming from and going, and Petitioner stated that he was coming from the area of the City Mission and a McDonald's located on South Pearl Street. *Id.* at p. 18. Officer Mulligan conducted a frisk of Petitioner and found $73, comprised of one $50 bill, one $20 bill, and three $1 bills, in Petitioner's wallet. *Id.* at p. 20. Petitioner was then taken into custody. *Id.* at p. 21.

Albany County Court Judge Thomas A. Breslin denied Petitioner's motion in its entirety. *Id.* at pp. 34-38. Judge Breslin determined that (1) the police had probable cause to arrest Petitioner because he "matche[d] the exact description" of the robber; (2) the show-up identification procedure was appropriate because it "occurred close in time and geography to the area of the initial robbery"; and (3) Petitioner's statements were admissible because he was not in custody when he answered Officer Mulligan's questions. *Id.*

---

[3](...continued)
15 2010 ("Trial Tr."). The Trial Transcript for November 16 & 17, 2010 continues at Docket Entry 10-2, which also contains the transcript for the sentencing hearing on February 16, 2011 ("Sentencing Tr.").

## 2. *Trial*

On November 12, 2010, a jury trial commenced, at which the following facts were adduced. On February 26, 2010, Jane Smith, an internal auditor for the New York State Office of Children, Family Services, went to visit her friend, Garland Rucker, who lived at 101 South Pearl Street. Trial Tr. at pp. 265-67. While Smith was waiting by the entrance of the apartment building for Rucker, she was approached by Petitioner. *Id.* at pp. 268-69. Petitioner mumbled something Smith could not understand and Smith tried to move out of his way. *Id.* at p. 269. Petitioner stayed in front of Smith and continued mumbling; eventually, Smith heard Petitioner say, "Give me your money." *Id.* at p. 270. Petitioner kept repeating this and moved closer and closer to Smith. *Id.* Smith, who had her pocketbook, said, "Okay," and began to slowly unzip her pocketbook in order to stall. *Id.* Smith saw that she could not get past Petitioner and that he was "too big" for her to fight. *Id.* at pp. 270-71.

Smith had unzipped her pocketbook halfway, when Petitioner, who had his hands in his pockets the whole time, stuck what Smith thought was a gun towards her, and stated, "Give me your money now or I'm going to shoot you." *Id.* at p. 271. Smith described the object in Petitioner's pocket as "bulky" and as the "shape of a pistol." *Id.* at p. 293. When Petitioner said this, Smith became afraid and finished unzipping her pocketbook and tried to get her wallet out. *Id.* at p. 271. Petitioner then snatched her wallet from her hand and began going through it. *Id.* at pp. 271-72. Petitioner took a $50 bill from the wallet, but did not go through the whole wallet. *Id.* at p. 272. Smith detected the smell of alcohol on Petitioner's breath. *Id.* Smith asked for her wallet back, and Petitioner asked her to give him more money. *Id.* Smith removed a $20 bill from her wallet, which Petitioner snatched from her hand. *Id.* Petitioner kept saying, "Where's the rest of it? Where is the

rest of your money?" *Id.* at pp. 272-73.  Smith removed a couple of $1 bills from her wallet and gave them to Petitioner.  *Id.* at pp. 272-73.  As Smith put her wallet back into her pocketbook, Petitioner began to pull on the pocketbook.  *Id.* at pp. 273-74.  As Petitioner was pulling on the pocketbook, Smith and Petitioner moved closer to the edge of the landing, which was better lit, and Petitioner released the pocketbook and ran away.  *Id.* at p. 274.

Rucker then arrived at the door, and after Smith explained what had happened, they took Rucker's car to search for Petitioner.  *Id.* at p. 278.  Shortly thereafter, they encountered a police officer and told him what had happened.  *Id.* at p. 279.  Officer Mulligan and Officer Maioriello arrived at the location and interviewed Smith, who described the suspect as a black male, wearing a dark green jacket, blue jeans, and white sneakers.  *Id.* at pp. 176 & 205.  Smith informed Officer Mulligan that she thought Petitioner had a handgun.  *Id.* at p. 178.  Smith also stated the suspect had taken one $50 bill, one $20 bill, and three $1 bills from her.  *Id.* at p. 179.

After obtaining her statement, Officer Mulligan took Smith in his vehicle to drive around the area and search for Petitioner.  *Id.* at pp. 176 & 280.  As they drove around the area, approximately two blocks from the location of the robbery, Officer Mulligan noticed an individual matching the suspect's description and pointed him out to Smith.  *Id.* at pp. 177 & 182.  Smith identified Petitioner as the individual who had robbed her.  *Id.* at pp. 177 & 281.  Officer Mulligan approached Petitioner and interviewed him about what he was doing and where he was coming from, and Petitioner said that he was coming from the area of the City Mission and McDonald's.  *Id.* at p. 178.  Petitioner appeared intoxicated to Officer Mulligan.  *Id.* at p. 179.  Officer Mulligan conducted a frisk of Petitioner and found his wallet, which contained one $50 bill, one $20 bill, and three $1 bills.  *Id.*  Officer Mulligan also recovered a sheet rocking knife from Petitioner.  *Id.* at p. 181.

-5-

Based on Smith's identification of Petitioner, Petitioner was taken into custody. *Id.* at p. 180.

### 3. Verdict and Sentencing

On November 17, 2010, the jury returned a verdict of guilty on all charges. Trial Tr. at pp. 483-84. On February 16, 2011, Judge Breslin sentenced Petitioner, as a persistent violent offender, to a maximum term of twenty-five years to life on the conviction for Robbery in the First Degree, and a concurrent one-year sentence on the conviction for Criminal Possession of Stolen Property in the Fifth Degree. Sentencing Tr. at pp. 46-47.

### 4. Direct Appeal

Petitioner's appellate counsel filed a brief in the Appellate Division, Third Department, raising the following grounds of appeal: (1) the evidence was legally insufficient to establish that Petitioner "displayed" a firearm to support a conviction for Robbery in the First Degree and the verdict was against the weight of the evidence; (2) trial counsel was ineffective; (3) the conviction of Robbery in the First Degree should be reduced to Robbery in the Second Degree; (4) the "show-up" identification procedure was unduly suggestive; and (5) the sentence was harsh and excessive. R. Part 1 at pp. SR 1-32. On June 13, 2013, the Appellate Division unanimously affirmed the conviction. *People v. Toye*, 967 N.Y.S.2d 210 (App. Div. June 13, 2013).

On June 26, 2013, Petitioner's counsel sought leave to appeal to the Court of Appeals on the following grounds: (1) legally insufficient evidence to establish Robbery in the First Degree; (2) ineffective assistance of trial counsel; (3) Petitioner's conviction should have been reduced to Robbery in the Second Degree; and (4) the show-up identification procedure was unduly suggestive. R. Part 1 at pp. SR 261-67. On January 7, 2014, the Court of Appeals denied leave to appeal. *People v. Toye*, 22 N.Y.3d 1091 (2014).

### 5.  *Criminal Procedure Law Article 440 Motion*

On or about September 4, 2015, Petitioner filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10, raising certain claims of ineffective assistance of counsel, which involved matters outside the record.  Dkt. No. 20-1 at pp. 44-58.[4]  On October 28, 2015, the county court denied Petitioner's motion.  *Id.* at pp. 4-12.  The Appellate Division denied Petitioner's application for leave to appeal on February 4, 2016.  Dkt. No. 26-1.

## B.  Summary of the Petition

Liberally construed, the Petition raises the following claims for relief: (1) the evidence was legally insufficient to establish Robbery in the First Degree (Ground One); (2) Petitioner was denied effective assistance of counsel (Ground Two); (3) Petitioner's conviction should have been reduced to Robbery in the Second Degree (Ground Three); (4) the show-up identification procedure was unduly suggestive (Ground Four); and (5) Petitioner's sentence was harsh and excessive (Ground Five).  Pet.

On September 2, 2015, Petitioner filed a Motion to Amend the Petition to include counsel's failure to properly advise him regarding a pre-indictment plea offer as a basis for his ineffective assistance of counsel claim.  Dkt. No. 12.  Petitioner also sought an order to stay the proceedings in order to exhaust unexhausted claims in state court.  *Id.*  On September 27, 2015, then-Magistrate Judge Randolph F. Treece denied Petitioner's Motion to Amend as moot because the proposed ineffective assistance claim was already included in the Petition.  Dkt. No. 14.  Judge Treece also denied the Motion to Stay the proceedings, finding that Petitioner had not shown "good cause" for his failure to exhaust his ineffective assistance claim.  *Id.*

---

[4] Citations to the Exhibits at Docket Entry 20-1 are to the pagination automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

On October 28, 2015, Petitioner again moved to amend the Petition to add the same ineffective assistance of counsel claim and to stay the proceedings. Dkt. No. 17. The Court denied Petitioner's Motion for substantially similar reasons as Petitioner's first Motion was denied. Dkt. No. 19.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)

-8-

and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)).

## B. Ground Two – Ineffective Assistance of Counsel

Petitioner asserts that he was "repeatedly denied effective assistance of counsel at varying

stages of his case," and, in particular, makes the following claims against his counsel: (a) Attorney Joseph McCoy failed to (i) appropriately advise him regarding a pre-indictment plea offer; and (ii) advise him regarding whether to testify before the grand jury; (b) Attorney Timothy Berry failed to inform him of a decision on a pre-trial omnibus motion; and (c) his trial counsel, Glenn Hammond, failed to (i) have Petitioner admitted into a drug treatment program; and (ii) discuss defense strategy with him. Pet. at pp. 11-13.

On direct appeal, the Appellate Division held that Petitioner "received meaningful representation" because the record showed that counsel "presented a plausible defense, offered intelligent and articulate opening and closing statements, effectively cross-examined the People's witnesses and made appropriate objections" *People v. Toye*, 967 N.Y.S.2d 210, 214 (2013). The Appellate Division noted that counsel had offered to request charging the jury with an affirmative defense under Penal Law § 160.15(4) and a lesser included charge of Robbery in the Second Degree, but Petitioner declined to request such charges. *Id.* at 213. The Appellate Division did not address Petitioner's claims concerning his counsel's performance relative to the grand jury proceeding and pre-trial plea bargaining, since such claims involved off the record matters and therefore were properly raised by a CPL Article 440 motion rather than through direct appeal. *Id.* Petitioner subsequently brought a CPL Article 440 motion raising those claims, which was denied by the county court. Dkt. No. 20-1 at pp. 4-12.

### 1. Exhaustion

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot

adequately protect petitioner's rights.[5] *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine arises from principles of comity and "recognizes that state courts, no less than federal courts, are bound to safeguard the federal, rights of state criminal defendants." *Daye v. Attorney Gen. of State of New York*, 696 F.2d 186, 191 (2d Cir. 1982). In order to exhaust his state remedies, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the States's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requires a petitioner to present "his claim to the highest court of the state." *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000). The exhaustion requirement also requires the petitioner to "fairly present[]" his federal claim to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye v. Attorney Gen. of New York*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). Although a *habeas* court may not grant a petition on an unexhausted claim, it may "reject a claim on the merits notwithstanding the fact that it is unexhausted." *Aparicio v. Artuz*, 269 F.3d at 90 n.5.

Respondent argues that Petitioner failed to exhaust remedies on his ineffective assistance of

---

[5] 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

counsel claim insofar as it is based on allegations that counsel failed to properly advise him as to the pre-indictment plea offer and grand jury testimony. Dkt. No. 8-1, Resp't's Mem. of Law at pp. 10-11. With respect to these grounds for Petitioner's ineffective assistance claim, the Appellate Division held that they "involve matters outside of the record and, as such, are more properly the subject of a CPL article 440 motion." *People v. Toye*, 967 N.Y.S.2d at 213. As argued by Respondent, where "[w]here a petitioner 'used the wrong procedural vehicle' to present his claim to the state courts, 'the state courts never had a fair opportunity to pass on his claim' and claim is unexhausted." *Ramos v. Racette*, 2012 WL 12924, at *16 (E.D.N.Y. Jan. 4, 2012) (quoting *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985)).

It now appears, however, that Petitioner has exhausted his remedies on the two unexhausted grounds for his ineffective assistance of counsel claim while his Petition was pending before the Court. Petitioner has filed with the Court: (1) his motion to vacate the judgment pursuant to CPL § 440.10 based on the advice counsel offered relative to the pre-indictment plea offer and grand jury proceeding, Dkt. No. 20-1 at pp. 44-58; (2) the district attorney's opposition to Petitioner's CPL § 440.10 motion, *id.* at pp. 13-20;[6] (3) the state trial court's order denying Petitioner's CPL § 440.10 motion, *id.* at pp. 4-12; (4) Petitioner's application for leave to appeal the trial court's decision to the Appellate Division, Third Department, *id.* at p. 1; and (5) a letter indicating that Petitioner's application for leave to appeal to the Third Department was denied on February 4, 2016,[7] Dkt. No.

---

[6] Petitioner also submitted his reply to the district attorney's opposition, along with the exhibits to such reply. Dkt. No. 20-1 at pp. 21-43. However, as Petitioner explains, his reply was not submitted to the state trial court before it rendered its decision denying Petitioner's CPL § 440.10 motion. Dkt. No. 20. Petitioner claims that the state trial court's decision on his § 440.10 motion was "premature." *Id.*

[7] A defendant may apply for leave to appeal an order denying a motion to vacate a judgment pursuant to CPL § 440.10. N.Y. Crim. Proc. § 450.15(1).

26-1.  In his CPL § 440.10 motion, Petitioner explicitly argued that he was denied effective assistance of counsel under the Sixth Amendment with respect to advice rendered on whether to accept the pre-indictment plea offer and whether to testify before the grand jury.  Dkt. No. 20-1 at pp. 47 & 50-51.  Based on these submissions, the Court therefore finds that Petitioner "fairly presented" his federal claim to the state court and completed the state's appellate process by appealing the trial court's denial of his CPL § 440.10 motion.  Therefore, Petitioner's ineffective assistance of counsel claim is fully exhausted and the Court proceeds to the merits of the claim.[8]

### 2.  Merits of Petitioner's Ineffective Assistance of Counsel Claim

The standard for an ineffective assistance of counsel claim requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  In determining the reasonableness of counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. at 689.  Second, "[t]o establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v.*

---

[8] The Court notes that Respondent also argues that Petitioner's ineffective assistance of counsel claim is procedurally barred.  Resp't's Mem. of Law at p. 12 n.7.  In this regard, Respondent argues that the Appellate Division's holding that Petitioner's claims relative to the pre-indictment plea offer and grand jury proceeding were not properly raised on direct appeal because they involved matters outside the record constitutes an adequate and independent bar to *habeas* review.  *Id.*  Federal *habeas* review of a state-court conviction is generally prohibited if a state court rested its judgment on a state procedural requirement that is "independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "[s]tate procedural bars are not immortal . . . they may expire because of later actions by state courts.  If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."  *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  Here, because the state court has now reached the merits of Petitioner's ineffective assistance claim, there is no procedural bar to *habeas* review.

**-13-**

*Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *Strickland v. Washington*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

The *Strickland* standard is "highly deferential." *Strickland v. Washington*, 466 U.S. at 689. Furthermore, on federal *habeas* review, this standard is "doubly deferential"; "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 1 23 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.*

a. Petitioner's Claims against his Counsel McCoy

Petitioner asserts that his counsel, Assistant Public Defender Joseph McCoy, did not appropriately advise him regarding whether to accept a pre-indictment offer of two-to-four years on a plea to Robbery in the Third Degree. Pet. at p. 11; Traverse at p. 8. After the indictment was returned charging Petitioner with Robbery in the First Degree, Petitioner was offered a plea offer of twelve years to life, which he rejected. Plea Bargain Tr. Following trial, Petitioner was sentenced, as a persistent violent offender, to a maximum term of twenty-five years-to-life on his conviction for Robbery in the First Degree. Sentencing Tr. at pp. 46-47. Petitioner claims that but for his counsel's ineffective advice, he would have accepted the initial pre-indictment plea offer of two-to-four years. Traverse at p. 9. Petitioner has requested that the Court conduct an evidentiary

*-14-*

hearing regarding this claim.  Dkt. Nos. 38-1 & 41.

Petitioner also asserts that McCoy did not appropriately advise him on whether to testify before the grand jury.  Pet. at pp. 11-12.  Specifically, Petitioner claims that McCoy did not inform him that his case was scheduled to go before the grand jury until the date of the hearing and that McCoy "provided no advice about whether to testify" at the hearing.  *Id.*  When Petitioner's request to adjourn the hearing was denied, he "reluctantly" decided to testify.  *Id.*

### i. County Court's Decision Denying Petitioner's CPL 440 Motion

On October 28, 2015, the county court denied Petitioner's CPL 440 motion without holding a hearing because it determined that the record was sufficient to decide the motion.  Dkt. No. 20-1 at pp. 4-9.  The county court found that Petitioner's claims were  "unsupported by any . . . affidavit or evidence" and that there was "no reasonable possibility that the allegations [we]re true."  *Id.* at p. 11 (citing CPL § 440.30(4)(d)).

As to Petitioner's claim that McCoy failed to appropriately advise him regarding the pre-indictment plea offer, the county court found that the record reflected that Petitioner's "reason for not accepting a plea agreement was that he did not want to plead guilty rather than being due to a lack of adequate explanation from his attorney."  *Id.* at pp. 9-10.  Although Petitioner may have wished, "in hindsight," that he had accepted the lesser pre-indictment plea offer, that did not indicate ineffective assistance of counsel.  *Id.* at p. 10.

The county court further explained that "[t]he policy in place at the time of the pendency of this case permitted proposals for pleas to a felony prior to indictment to be presented to this court to consider (via a Superior Court Information [SCI])."  *Id.* at p. 6.  The court stated that it had an "active" role in such plea offers and "no plea offer which would bind the court is authorized to be

-15-

extended to a defendant without this court's approval." *Id.* at p. 7. The court noted that it did "not have a recollection of approving an offer of 2 to 4 years prior to indictment and the records that were able to be located do not reflect such an offer. The procedure used when considering an [Superior Court Information] did not call for an appearance on the record to reject a preindictment offer and therefore it cannot be said with certainty that there was no such offer." *Id.* at p. 8.

With respect to Petitioner's grand jury claim, the county court noted that Petitioner had not made any allegations in support of the claim, and had stated that he had spoken with McCoy by telephone on several occasions before he was indicted and had been accompanied by McCoy at his presentation to the grand jury. *Id.* at pp. 10-11.

ii. <u>Analysis</u>

The standards of review of § 2254(d) of AEDPA apply where a state court adjudicates a claim on the merits. *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) ("By its terms, § 2254(d) requires such deference only with respect to a state-court 'adjudication on the merits,' not to a disposition 'on a procedural, or other, grounds.'" (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)). "For purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d at 312; *accord Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court is not required to cite to Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court's decision contradicts them"). In this case, the county

court denied Petitioner's ineffective assistance claim on the merits, and therefore, AEDPA deference applies.  Upon review, the Court finds that the county court's decision was neither "contrary to" nor an "unreasonable application" of the standards in *Strickland*.

ii(a).  Pre-Indictment Plea Offer

The Sixth Amendment right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).  The Second Circuit "has recognized that it is 'a lawyer's general duty to advise a defendant concerning acceptance of a plea bargain,'" which "should usually include . . . providing information about 'the strengths and weaknesses of the case against [the defendant], as well as the alternative sentences to which he will most likely be exposed.'" *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015) (alteration in original) (citations omitted).  However, "[c]ounsel's conclusion as to how best to advise a client . . . enjoys a wide range of reasonableness.'" *Id.* (citation omitted).  There is no *per se* rule that requires "a lawyer to give an explicit opinion as to whether a client should take a plea offer." *Purdy v. United States*, 208 F.3d 41, 48 (2d Cir. 2000).  In order to show prejudice resulting from counsel's defective advice on whether to accept a plea offer, a petitioner must show that

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S. Ct. at 1385.

First, the Court must **deny** Petitioner's request to conduct an evidentiary hearing on this claim.  In *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011), the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim

*-17-*

on the merits." Second, although the record is sparse,[9] it clearly indicates that Petitioner's counsel McCoy rendered effective assistance in connection with the pre-indictment plea offer. Specifically, the record reflects that McCoy informed Petitioner of the plea offer of two-to-four years, but that Petitioner rejected the offer because the sentence would run consecutive to his sentence on parole. Plea Bargain Tr. at pp. 3-4. Although Petitioner claimed that his counsel's advice caused him to form a "misconception," he acknowledged that his counsel had correctly advised him that the sentences would run consecutively, not concurrently. *Id.* It therefore appears from the record that Petitioner did not choose to reject the plea offer due to defective advice from McCoy, but rather because he did not want to serve consecutive sentences. In addition to this record evidence indicating that McCoy advised Petitioner regarding the plea offer, Petitioner did not offer any evidence in support of his bald allegation that he was not appropriately advised. Accordingly, the county court's determination that Petitioner received effective assistance of counsel is not an objectively unreasonable application of *Strickland* and the Court recommends that the Petition be **denied** as to this claim. *See Strickland v. Washington*, 466 U.S. at 697 ("[T]here is no reasons for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing as to one.").

### ii(b).  Grand Jury Testimony

The Second Circuit has held that claims arising from a grand jury proceeding are non-cognizable on *habeas* review because any alleged prejudice from deficiencies in the grand jury proceedings is cured by a subsequent conviction after trial. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989 (stating that under *United v. Mechanik*, 475 U.S. 66 (1986) "claims concerning a state

---

[9] As noted by Respondent, although the district attorney's office confirmed that a plea offer was made on the SCI, it was unable to locate records indicating the terms of that plea offer. Resp't's Mem. of Law at p. 19 n.8.

grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court"). "It necessarily follows as a matter of law that [a petitioner] cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation." *Velez v. People of State of N.Y.*, 941 F. Supp. 300, 316 (E.D.N.Y. 1996); *see also Sloane v. Rock*, 2011 WL 2020573, at *9 (S.D.N.Y. Apr. 6, 2011) ("Any defect in the grand jury proceeding was cured by [Petitioner's subsequent conviction . . . [so] it necessarily follows as a matter of law that [Petitioner] cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him." (quoting *Bingham v. Duncan*, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003)). Accordingly, the Court recommends that the Petition be **denied** as to Petitioner's ineffective assistance of counsel claim relative to the grand jury proceeding.

### b. Petitioner's Claims Against his Counsel Berry

McCoy recused himself at the plea bargain hearing on April 19, 2010, and Petitioner's defense was reassigned within the Public Defender's office to Timothy Berry. Plea Bargain Hr'g at pp. 5-6. Petitioner claims that Berry "had very little contact" with him, and specifically failed to inform Petitioner of a decision denying an omnibus motion for over a month. Pet. at p. 12.

The record discloses that Berry filed an omnibus motion on or about May 10, 2010, seeking, *inter alia*, to dismiss the indictment on the ground of legal insufficiency and a suppression hearing. R. Part 1 at pp. SR 294-310. On June 11, 2010, the county court denied the motion to dismiss and ordered that a suppression hearing would be held. Dkt. No. 9-2, R. Part 2 at pp. SR 328-30. On July 15, 2010, Petitioner and Berry appeared in court and Petitioner stated that Berry had failed to keep him informed regarding the case. R. Part 1 at pp. SR 156-62. It was disclosed on the record that

Berry had not informed Petitioner of the decision on the motion before July 12, 2010, even though Petitioner had inquired about it several times. *Id.* at pp. SR 156-57. Berry also admitted that he had not seen Petitioner in person in over two months. *Id.* at p. SR 160. On that basis, the county court ordered that Petitioner's defense be reassigned within the Public Defender's office. *Id.* at pp. SR 160-61.

Petitioner's claim that Berry failed to keep him appraised of events in the case over a two-month period simply does not constitute ineffectiveness. "Because *Strickland* admonishes against mechanical standards for ineffectiveness, there is no set rule for the number of times counsel must meet with a defendant." *Rosario v. Bennett*, 2002 WL 31852827, at *29 (S.D.N.Y. Dec. 20, 2002) (citing, *inter alia*, *Wojtowicz v. United States*, 550 F.2d 786, 792 (2d Cir. 1977) ("In evaluating claims of ineffective assistance of counsel it has long been the rule that 'time consumed in oral discussion and legal research is not the crucial test . . . The proof of the efficiency of such assistance lies in the character of the resultant proceedings.'")). Under the circumstances, the Court does not find that Berry's failure to visit Petitioner while a motion was pending and delay in informing Petitioner of the decision on that motion constitutes ineffective assistance of counsel. Furthermore, Petitioner is unable to show any prejudice resulting from Berry's lack of contact. Accordingly, the Court recommends that the Petition be **denied** as to Petitioner's ineffective assistance of counsel claim based on Berry's failure to timely inform him of the decision on the pretrial omnibus motion.

c. Petitioner's Claims Against his Counsel Hammond

Following the suppression hearing, Petitioner retained private counsel and was represented by Glenn Hammond at trial. Pet. at p. 13. Petitioner claims that in a conversation before trial, Hammond told him he would try to get Petitioner into a "program." *Id.* However, when Petitioner

next spoke to Hammond, Hammond informed him that the District Attorney had rejected any further

plea discussions and that the trial would proceed. *Id.* Petitioner further contends that Hammond did

not discuss a defense with him and did not offer any witnesses at trial. *Id.*

First, Hammond's failure to negotiate a more favorable plea bargain does not constitute

ineffective assistance of counsel.  "[T]he failure to obtain a plea bargain is not evidence of

ineffective assistance of counsel when the record does not contain evidence that one might have

been offered." *Eisemann v. Herbert*, 401 F.3d 102, 109 (2d Cir. 2005) (citing *Burger v. Kemp*, 483

U.S. 776, 785-85 (1987)).  In this case, Petitioner faced a minimum sentence of twenty years-to-life,

a maximum sentence of twenty-five years-to-life, and had been offered a plea bargain of twelve

years to life on the count of Robbery in the First Degree.  *See* Plea Bargain Tr. at p. 2.  Thus,

Petitioner's assertion that Hammond promised to negotiate his admission into a drug treatment

program is implausible.  Furthermore, even if Hammond did engage in unsuccessful plea discussions

with the prosecution regarding Petitioner's admission into a drug treatment program, such

discussions do not amount to ineffective assistance under *Strickland*.  *See Lafler v. Cooper*, 132 S.

Ct. at 1378 ("If a plea bargain has been offered, a defendant has the right to effective assistance of

counsel in considering whether to accept it. . . . If no plea offer is made . . . the issue raised here

simply does not arise.").

Second, a review of the record shows that Hammond pursued a cogent defense, effectively

cross-examined the prosecution's witnesses, and made appropriate objections.  In his opening

statement and summation Hammond argued that the patrol car video showed that Smith was

uncertain (1) in her identification of Petitioner and (2) about the exact amount of money that had

been stolen.  Trial Tr. at pp. 166-72 & 407-26.  Hammond discussed charging the jury with the

-21-

lesser included offense of Robbery in the Second Degree, but Petitioner declined to request that charge. *Id.* at pp. 397-98. Petitioner's claim that Hammond did not discuss a defense with him is unsupported, and again, "there is no set rule for the number of times counsel must meet with a defendant." *Rosario v. Bennett*, 2002 WL 31852827, at *29. Accordingly, the Court recommends that the Petition be **denied** as to the claim that Hammond rendered ineffective assistance of counsel.

### C. Ground One – Sufficiency of the Evidence

Petitioner asserts that the evidence presented at trial was legally insufficient to support a finding that Petitioner "displayed" a firearm. Pet. at pp. 7-11. Petitioner argues that, on the patrol car video, Smith sounded unsure whether the robber had a gun. *Id.* at p. 7. Petitioner also notes that the felony complaint charged Petitioner with Robbery in the Third Degree, and did not mention that Petitioner possessed a firearm. *Id.* Petitioner further argues that there was no evidence at trial that he possessed a firearm or that Smith witnessed a firearm. *Id.* at p. 9. Instead, Smith stated she saw something "shaped" like a pistol, a "bulky" object in Petitioner's pocket. Trial Tr. at p. 293.

The Appellate Division denied Petitioner's claim, finding that Smith's testimony "was sufficient to show that defendant 'conspicuously and consciously conveyed the impression that he was reaching for something which, under the circumstances, the victim could reasonably conclude was a firearm.'" *People v. Toye*, 967 N.Y.S.2d at 212 (quoting *People v. Lopez*, 73 N.Y.2d 214, 222 (1989)).

A *habeas* petitioner claiming that there was insufficient evidence to support a conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The reviewing court is required to consider the

-22-

evidence in the light most favorable to the prosecution. *Id.* at 319. In the presence of "a record of historical facts that supports conflicting inferences," the reviewing court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless 'the decision was "objectively unreasonable."'" *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)).

Under New York law, "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime . . . he . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. PENAL LAW § 160.15(4).

As Respondent argues, Petitioner's insufficiency claim is largely an attack on Smith's credibility and on the Appellate Division's interpretation of the "display" element of N.Y. PENAL LAW § 160.15(4), and therefore does not offer a basis for *habeas* review. *See* Resp't's Mem. of Law at p. 23. First, insofar as Petitioner argues that Smith was uncertain whether he had a pistol, a *habeas* court must defer to the jury's assessment of credibility. *Id.* (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)). Second, insofar as Petitioner suggests that because there was no evidence that he possessed a firearm, he therefore could not have "displayed" a firearm, the interpretation of the "display" element of First Degree Robbery is a matter of state law and a writ of *habeas* may not be issued on the basis of an error in state law. *Id.* (citing *Taylor v. Rivera*, 509 F. App'x 51, 53 (2d Cir. 2013)).

Moreover, the Appellate Division's rejection of Petitioner's insufficiency challenge was not objectively unreasonable.  In order to prove the display element, the government "must show that the defendant consciously displayed something that could reasonably be perceived as a firearm, with the intent of forcibly taking property, and that the victim actually perceived the display." *People v. Lopez*, 73 N.Y.2d 214, 220 (1989).  The display of anything that appears to be a firearm, "even a hand consciously concealed in clothing may suffice." *Id.*

Here, Smith testified that Petitioner, with his right hand in his pocket, stuck what appeared to be a gun towards her and stated "Give me your money now or I'm going to shoot you." Trial Tr. at p. 271.  While Smith admitted that it could have been Petitioner's finger, she thought it was "bulky" and "looked like it could be a pistol, the shape of a pistol." *Id.* at p. 293.  Based on Smith's testimony, a rational trier of fact could have concluded that Petitioner "displayed" a firearm within the meaning of N.Y. PENAL LAW § 160.15(4).  Accordingly, the Court recommends that the Petition be **denied** as to the legal insufficiency claim.

### D.  Ground Three – Robbery in the Second Degree as a Lesser Included Offense

In addition to his legal insufficiency claim, Petitioner also asserts that his conviction of Robbery in the First Degree should have been reduced to Robbery in the Second Degree because he did not possess a firearm capable of being discharged.  Pet. at pp. 14-15.  Under N.Y. PENAL LAW § 160.15(4), "it is an affirmative defense that such . . . firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." Petitioner asserts that there was "confusion" among his counsel and the trial court "about whether robbery in the second was a lesser included offense, or whether it would result from an affirmative defense." *Id.* at p. 15.

*-24-*

Contrary to Petitioner's assertion, the record shows that his counsel withdrew his request for a lesser included offense and the affirmative defense following a colloquy with the trial court. *See* Trial Tr. at pp. 398 & 402. Petitioner's counsel Hammond initially stated that he was requesting a lesser included offense of Robbery in the Third Degree and the affirmative defense. *Id.* at p. 393. The trial court noted that Petitioner had not offered any evidence that could support an affirmative defense. *Id.* Hammond then suggested that he might request a lesser included offense of Robbery in the Second Degree, but, after consulting with Petitioner, declined to make such request. *Id.* at pp. 396-98. At the end of the colloquy, Hammond stated that he would withdraw all requests for a lesser included offense and the affirmative defense. *Id.* at p. 398.

Because Petitioner declined to request the affirmative defense in N.Y. PENAL LAW § 160.15(4) or the lesser included offense of Robbery in the Second Degree, the Appellate Division held that his claim that his conviction should be reduced to Robbery in the Second Degree was unpreserved. *People v. Toye*, 967 N.Y.S.2d at 2123 n.1 (citing, *inter alia*, *People v. Fulwood*, 927 N.Y.S.2d 246 (App. Div. 2011)). Respondent therefore argues that Petitioner's claim is procedurally barred. Resp't's Mem. of Law at pp. 26-27.

Federal *habeas* review of a state court conviction is generally prohibited if a state court rested its judgment on a state procedural requirement that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (explaining that under *Wainwright v. Sykes*, 433 U.S. 72 (1977), "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim"); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). In the context of *habeas* review, "the application

of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism." *Id.* at 730. "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman v. Thompson*, 501 U.S. at 732.

Here, the Appellate Division expressly held that Petitioner's claim that his conviction should be reduced to Robbery in the Second Degree was procedurally barred under New York's contemporaneous objection rule. *People v. Toye*, 967 N.Y.S.2d at 213 n.1. Under the contemporaneous objection rule, a party preserves an objection for purposes of appeal if they "without success . . . either expressly or impliedly sought or requested a particular ruling." N.Y. CRIM. PROC. L. § 470.05(2). The Second Circuit has repeatedly held that New York's contemporaneous objection rule is an "adequate" state ground that may bar federal *habeas* review. *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011); *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011); *Richardson v. Greene*, 497 F.3d 212, 220 (2d Cir. 2007); *Garvey v. Duncan*, 485 F.3d 709, 718 (2d Cir. 2007). The Court therefore finds that Petitioner's claim is procedurally barred.

A federal *habeas* court may consider a procedurally defaulted claim if "the habeas petitioner can demonstrate 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. at 749. To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the state's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999). Here, Petitioner cannot establish cause for his procedural default because his counsel withdrew his request for a charge of the affirmative defense or a lesser included offense of Robbery

in the Second Degree.  The Supreme Court has stated that "default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if had not personally waived that claim." *Murray v. Carrier*, 477 U.S. at 485 (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).  Since Petitioner has not established cause for his procedural default of this claim, the Court need not address prejudice.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).  Nor has Petitioner offered evidence that he is actually innocent.

Accordingly, the Court recommends that the Petition be **denied** as to the claim that Petitioner's conviction should be reduced to Robbery in the Second Degree.

### E.  Ground Four – Unduly Suggestive Show-Up Identification Procedure

Petitioner claims that the show-up identification procedure was unduly suggestive because Smith only identified Petitioner after Officer Mulligan directed her attention to him.  Pet. at pp. 16-17.  The Appellate Division rejected the claim that the show-up was unduly suggestive because the identification was made "approximately 40 minutes after the robbery and only moments after the victim identified defendant as he stood near a bus stop located a few blocks away from the scene of the crime." *People v. Toye*, 967 N.Y.S.2d at 212.

The Due Process Clause protects a defendant's right "to be free from suggestive identification procedures that create a 'very substantial likelihood of irreparable misidentification.'" *Bratcher v. McCray*, 419 F. Supp. 2d 352, 357 (W.D.N.Y. 2006) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)); *see also United States v. Douglas*, 525 F.3d 225, 242 (2d Cir. 2008) ("A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that make an identification unreliable.").  The inquiry into the admissibility

of an eyewitness identification proceeds in two steps:

> The court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility; no further inquiry by the court is required, and 'the reliability of properly admitted eyewitnesses identification, like the credibility of the other parts of the prosecution's case is a matter for the jury.' If the court finds, however, that the procedures were suggestive, it must then determine whether the identification was nonetheless independently reliable. In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability.

*Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) (citations omitted).

To determine whether the identification procedure had "independent reliability" courts consider the following factors: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

"Show-up identification procedures, in which a witness is shown a single suspect for the purpose of identification shortly after a crime, are generally disfavored." *Lockhart v. Brown*, 2008 WL 2397609, at *4 (N.D.N.Y. June 10, 2008) (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds*, *Griffith v. Kentucky*, 479 U.S. 314 (1987)); *see also Brisco v. Ercole*, 565 F.3d at 88 ("[A] 'showup' identification procedure is inherently suggestive because it involves the presentation of a single suspect to a witness by the police . . . ."). Nonetheless, a show-up identification only violates due process if it is "unnecessarily suggestive." *Bratcher v. McCray*, 419 F. Supp. 2d at 358 (citing *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir. 1994)). The Second Circuit has upheld the admissibility of show-ups conducted in close temporal and geographic

proximity to the crime scene. *Brisco v. Ercole*, 565 F.3d at 89; *United States v. Bautista*, 23 F.3d at 729-30; *United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir. 1992); *United States v. Sanchez*, 422 F.2d 1198, 1199-1200 (2d Cir. 1970).

Here, Petitioner cannot show that the show-up identification procedure was "unnecessarily suggestive." As the Appellate Division noted, the identification was made within forty minutes of the robbery and at a bus stop that was only a few blocks away from where the robbery occurred. Suppression Hr'g Tr. at pp. 16 & 31. Smith unequivocally identified Petitioner from the patrol car, and Petitioner matched the description of the suspect Smith had originally given. *Id.* at pp. 14 & 17-18; Trial Tr. at p. 281. Although Officer Mulligan saw Petitioner first and drew Smith's attention to him, the record shows that there was nothing suggestive about the manner in which Officer Mulligan indicated Petitioner and that Smith independently identified Petitioner. Suppression Hr'g Tr. at pp. 16-17; *see also Malik v. Kelly*, 1999 WL 390604, at *5 (E.D.N.Y. Apr. 6, 1999) (finding that a show-up was not suggestive where the police drove the victim past the suspect in order to confirm her identification). Thus, the Appellate Division's rejection of this claim neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Accordingly, the Court recommends that the Petition be **denied** as to Petitioner's claim that the show-up identification procedure was unduly suggestive.

### F. Ground Five – Harsh and Excessive Sentence

Finally, Petitioner argues that his sentence of twenty-five years-to-life was "harsh and excessive" because the robbery did not involve physical violence. Pet. at p. 18. Petitioner was sentenced as a persistent violent offender to maximum term of twenty-five years-to-life on his conviction for Robbery in the First Degree, which is a class B felony. *See* Sentencing Tr.; N.Y.

PENAL LAW §§ 70.08(2), (3)(a-1), & 160.15(4).

First, as Respondent argues, Petitioner did not exhaust his remedies on this claim because he did not include it in his application for leave to the Court of Appeals.  R. Part 1 at pp. SR 261-67. Furthermore, the claim was not presented as a federal claim in Petitioner's counseled brief to the Appellate Division.  *See id.* at pp. SR 31-32 (citing N.Y. CRIM. PROC. L. 470.15(b)(6)).  Although Petitioner's claim is therefore unexhausted, because it is meritless, the Court recommends that it be **denied** on the merits for the reasons set forth below.  *See* 28 U.S.C. § 2254(b).

"No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  Here, as explained above, Petitioner's sentence was within the range prescribed by state law.  Petitioner was sentenced as a persistent violent felony offender on a conviction for Robbery in the First Degree, which is a class B felony.  N.Y. PENAL LAW §§ 70.08(2), (3)(a-1), & 160.15(4).  Under CPL § 70.08(b)(3)(a-1), an indeterminate life sentence for a persistent violent felony offender on class B felony "must be at least twenty years and must not exceed twenty-five years."  Therefore, Petitioner's excessive sentence claim does not raise a basis for *habeas* relief.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as

required by 28 U.S.C. § 2253(c)(2).[10]  Any further request for a COA must be addressed to the Court

of Appeals (FED. R. APP. P. 22(b)); and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL</u>**

**<u>PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:   June 7, 2017
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[10] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").